■ JOSEPH COLONEL, Respondent, v TARGEE CONTRACTING CO., INC., Appellant.—Order, Supreme Court, Bronx County , entered on or about June 13, 1978, granting plaintiff's motion to set aside a release, amend the *ad damnum* clause and transfer the case from the Civil Court, unanimously reversed, on the law, without costs and without disbursements, and plaintiff's motion denied in all respects. Plaintiff sustained injuries on September 24, 1974, when he allegedly fell nine feet into an unguarded construction hole, which had been dug by the defendant for the installation of a gas tank. In the Civil Court action, plaintiff's bill of particulars claimed multiple contusions and abrasions of both lower extremities, sprain of both feet and ankles and "traumatic phlebitis of the left upper leg." That action was settled before trial for the sum of $2,750. Plaintiff apparently authorized the settlement and approved it when he executed a general release on December 14, 1976. Although a stipulation of discontinuance was signed by plaintiff's attorneys, the record does not reflect whether the stipulation was executed on behalf of defendant and thereafter filed. However, on the date the settlement check was indorsed and deposited in plaintiff's attorneys' special account, plaintiff advised counsel that (1) he had been under the care of a physician since November, 1976 for an ingrown toenail with an abcess. formation on his big right toe; (2) he had been in pain and unable to sleep for approximately 71 days; and (3) hospitalization was required. In the hospital the toe was amputated because gangrene had set in. Eight months later plaintiff brought on this motion to vacate the release and for leave to increase the *ad damnum* clause of the complaint to $250,000 and to transfer

the case to the Supreme Court. Special Term granted the application, finding that there was a mutual mistake as to the existence and consequences of an unknown injury. We disagree. Upon this record we do not perceive proof sufficient to establish mutual mistake so as to warrant vacatur of the release. The letter submitted by Dr. Tacktill, the treating physician, reports that plaintiff had been undergoing treatment for the abcess formation on the right big toe, which resulted from an ingrown toenail, from November 8, 1976 through December 23, 1976. It is plain that at the time plaintiff executed the general release, he was being treated for the very condition of which he now claims he was unaware. The record does not support Special Term's finding of mutual mistake as to the existence and consequences of an unknown injury. Rather, the proof indicates either a mistake as to the consequences or future course of a known injury, insufficient to vacate a general release (Mangini v McClurg, 24 NY2d 556; Viskovich v Walsh-Fuller-Slattery, 16 AD2d 67, affd 13 NY2d 1100) or an unrelated injury. Moreover, even had no release been executed, the moving papers are patently insufficient to support the application for leave to increase the ad damnum clause and to transfer the case from the Civil Court. Such a motion must be supported by a proper physician's affidavit which demonstrates the nature of the injury, its prospective consequence, resulting disability and causal relationship between the disability and the original injuries sustained (Ferrari v Paramount Plumbing & Heating Co., 20 AD2d 878; Goldfarb v 65 East 11th St. Corp., 40 AD2d 657). Although Dr. Tacktill's letter reports that he and Dr. Pai were of the opinion that the impaired circulation which caused the gangrene of the right big toe was causally related to the accident of September 24, 1974, the report of Dr. Pai expresses no opinion as to causal relationship. Dr. Pai's report merely states that plaintiff related his pain to the 1974 accident. Somewhat contradictory is the statement in the report that when first examined by Dr. Pai on January 7, 1977, plaintiff complained of pain in the toe "and being unable to sleep for 71-days because of severe pain." Moreover, the hospital report annexed to the moving papers records as history an intervening fall by plaintiff in 1975, an event which neither physician discusses in relation to plaintiff's claim that the impaired circulation and gangrenous condition of the right big toe, which required amputation, was causally connected to the 1974 accident. We do not reach the question whether Special Term improperly entertained the motion since the action had apparently been discontinued by the execution and delivery of a stipulation of discontinuance by plaintiff's attorneys, which could only be set aside in a plenary action. (Yonkers Fur Dressing Co. v Royal Ins. Co., 247 NY 435.) Nor do we pass upon the propriety of the Supreme Court's assumption of jurisdiction over this attempt by motion to vacate the stipulation of discontinuance in the Civil Court. Concur—Lupiano, J. P., Fein, Lane, Markewich and Sullivan, JJ.