M.M. v Church of Our Lady of the Annunciation (2022 NY Slip Op 01361)





M.M. v Church of Our Lady of the Annunciation


2022 NY Slip Op 01361


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

532595
[*1]M.M., Appellant,
v
Church of Our Lady of the Annunciation et al., Respondents.

Calendar Date:January 7, 2022

Before:Garry, P.J., Egan Jr., Aarons and Colangelo, JJ.

Brennan & White, LLP, Queensbury (William J. White of counsel), for appellant.
Tobin & Dempf, LLP, Albany (Michael L. Costello of counsel), for respondents.



Egan Jr., J.
Appeal from an order of the Supreme Court (Mackey, J.), entered November 13, 2020 in Warren County, which granted defendants' motion to dismiss the complaint.
From 1986 through 1992, plaintiff was sexually abused by a priest stationed at defendant Church of Our Lady of the Annunciation, a parish church within defendant Roman Catholic Diocese of Albany (hereinafter the Diocese). In 2008, then-counsel for plaintiff alerted counsel for the Diocese to the abuse, as well as similar abuse inflicted upon plaintiff's brother, and requested reimbursement for counseling expenses both plaintiff and his brother had incurred (see J.M. v Church of Our Lady of the Annunciation, ___ AD3d ___ [decided herewith]). After the priest was convicted in Massachusetts on charges related to his sexual abuse of minors in that state, the Diocese authorized the requested reimbursement in 2012. Plaintiff continued with counseling for several years and his then-counsel, observing that he was likely to need counseling indefinitely and that the counseling had caused his brother to recall sexual abuse at the hands of a second priest, initiated settlement negotiations with counsel for the Diocese in 2014. The end result of those negotiations was a 2016 agreement under which the Diocese paid plaintiff $90,000 and plaintiff, in return, executed a general release.
On January 30, 2020, plaintiff commenced this action against defendants within the revived statute of limitations for certain child sexual abuse cases (see CPLR 214-g, as added by L 2019, ch 11, § 3), asserting various claims for damages. In lieu of serving an answer, defendants moved to dismiss the complaint upon the ground that plaintiff could not maintain the action because of the 2016 release (see CPLR 3211 [a] [5]). Supreme Court granted defendants' motion, and plaintiff appeals.
We affirm. "Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release" (Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011] [internal quotation marks and citation omitted]; see Ford v Phillips, 121 AD3d 1232, 1234 [2014]). Contrary to plaintiff's contention, defendants met their initial burden by producing the 2016 release, signed by him, in which he broadly released the Diocese, its parishes, employees and related individuals and entities from, among other things, "any and all claims . . . of any nature whatsoever, in law or equity, known or unknown arising from or by reason of any matter, act, omission, cause or thing whatsoever, whether known or unknown, foreseen or unforeseen, including without limitation any and all claims by or on behalf of [plaintiff] that [defendants] have ever committed." Plaintiff further agreed that "he [would] not hereafter institute . . . any claim or action [against defendants] . . . arising out of any matter that occurred or failed to occur up to and including" the 2016 execution of the release, "including[*2], without limitations, any matter asserted or which might have been asserted" by him. Extrinsic evidence is not considered in assessing whether the language of a release "unambiguously bars a particular claim," and the foregoing leaves no doubt that the 2016 release encompasses all claims that plaintiff seeks to pursue in this action (Matter of Walter, 180 AD3d 1201, 1203-1204 [2020]; see Stevens v Town of Chenango [Forks], 167 AD3d 1105, 1106-1107 [2018]; Rubycz-Boyar v Mondragon, 15 AD3d 811, 812-813 [2005], lv denied 5 NY3d 703 [2005]). Further, the fact that the statute of limitations was modified following the 2016 release to remove a bar to pursuing those claims does not alter that conclusion, as plaintiff "may not reopen a voluntary settlement agreement to take advantage of a subsequent change in the law" (Cutler v Travelers Ins. Co., 159 AD2d 1014, 1015 [1990], lv dismissed and denied 76 NY2d 768 [1990]; see Krichmar v Krichmar, 42 NY2d 858, 859-860 [1977]; Ianielli v North Riv. Ins. Co., 119 AD2d 317, 321 [1986], lv denied 69 NY2d 606 [1987]). Defendants therefore demonstrated the existence of a binding general release, shifting the burden to plaintiff to show questions "of fact as to whether the release bars this action" (Ford v Phillips, 121 AD3d at 1233; see Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d at 276).
In that regard, "[a] party is bound by his or her signature on a release containing language that is clear and unambiguous, unless cause exists sufficient to invalidate a contract, such as duress, illegality, fraud or mutual mistake" (Lodhi v Stewart's Shops Corp., 52 AD3d 1084, 1085 [2008]; see Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d at 276; Mangini v McClurg, 24 NY2d 556, 563 [1969]). Plaintiff alleges that he mistakenly believed that the 2016 release only encompassed his claim for compensation for counseling expenses as opposed to claims for future pain and suffering, but both the language of the release and the correspondence between counsel in the leadup to its execution confirm that the Diocese did not share that misunderstanding. To the contrary, the correspondence confirms that counsel for the Diocese corrected counsel for plaintiff when she suggested that the release would be a partial one that did not cover his "ongoing pain and suffering," advising her that the contemplated settlement "indirectly recognize[d] pain and suffering through the counseling" and would "require the execution of a general release." As such, any mistake by plaintiff was "a mere unilateral mistake . . . with respect to the meaning and effect of the release . . . [and] does not constitute an adequate basis for invalidating" it (Booth v 3669 Del., 242 AD2d 921, 922 [1997], affd 92 NY2d 934 [1998]; see Stevens v Town of Chenango [Forks], 167 AD3d at 1107; Phillips v Savage, 159 AD3d 1581, 1581 [2018]). Plaintiff's related allegations as to how the Diocese materially misrepresented [*3]the scope of the 2016 release are conclusively debunked by both the correspondence between counsel and the language of the release itself (compare Lodhi v Stewart's Shops Corp., 52 AD3d at 1085, and Kavoukian v Kaletta, 294 AD2d 646, 647 [2002], with Bloss v Va'ad Harabonim of Riverdale, 203 AD2d 36, 39-40 [1994]). Plaintiff's intimations of duress and unconscionability are no more compelling and, thus, we agree with Supreme Court that the unambiguous 2016 release was valid and barred the complaint in this action.
Garry, P.J., Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.